**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

Walden Minoli and John David Kittleson,
Individually and On Behalf of All Others
Similarly Situated

      Plaintiffs,

vs.                    Case No.: _____

                                      **CLASS ACTION**
                                      **JURY TRIAL DEMANDED**

LG PHILIPS LCD CO., LTD.; LG PHILIPS
LCD AMERICA, INC.; SAMSUNG ELECTRONICS
CO., LTD.; SHARP CORPORATION; SHARP
ELECTRONICS CORPORATION; TOSHIBA
CORPORATION; TOSHIBA MATSUSHITA
DISPLAY TECHNOLOGY CO., LTD.;
HITACHI LTD.; HITACHI DISPLAYS, LTD.;
HITACHI AMERICA LTD.; HITACHI
ELECTRONIC DEVICES (USA), INC.; SANYO
EPSON IMAGINING DEVICES CORPORATION;
NEC CORPORATION; NEC LCD TECHNOLOGIES,
LTD.; NEC ELECTRONICS AMERICA, INC.; IDT
INTERNATIONAL LTD.; INTERNATIONAL
DISPLAY TECHNOLOGY CO., LTD.; INTERNATIONAL
DISPLAY TECHNOLOGY USA, INC.; AU OPTRONICS;
AU OPTRONICS CORPORATION AMERICA; CHI MEI
OPTOELECTRONICS CORPORATION; CHI MEI
OPTOELECTRONICS USA, INC.; CHUNGHWA
PICTURE TUBES LTD.; HANNSTAR DISPLAY
CORPORATION, AND JOHN DOES 1-100,

      Defendants.

<u>**CLASS ACTION COMPLAINT FOR DAMAGES**</u>

      COME NOW Plaintiffs Walden Minoli and John David Kittleson, individually

and on behalf of all other persons or entities who purchased liquid-crystal display

products manufactured by Defendants LG Philips LCD Co., Ltd.; LG Philips LCD

America, Inc.; Samsung Electronics Co., Ltd.; Sharp Corporation; Sharp Electronics

Corporation; Toshiba Corporation; Toshiba Matsushita Display Technology Co., Ltd.; Hitachi Ltd.; Hitachi Displays, Ltd.; Hitachi America Ltd.; Hitachi Electronic Devices (USA), Inc.; Sanyo Epson Imagining Devices Corporation; NEC Corporation; NEC LCD Technologies, Ltd.; NEC Electronics America, Inc.; IDT International Ltd.; International Display Technology Co., Ltd.;   International Display Technology USA, Inc.; AU Optronics; AU Optronics Corporation America; Chi Mei Optoelectronics Corporation; Chi Mei Optoelectronics USA, Inc.; Chunghwa Picture Tubes Ltd.; Hannstar Display Corporation, and John Does 1-100, and allege, upon personal knowledge as to them and their own acts and, as to all other matters, upon information and belief based upon, *inter alia*, the investigation made by and through counsel, as follows.  Additional information in support of the claims herein is within the exclusive possession, knowledge and control of Defendants.

## NATURE OF THE CAUSE OF ACTION

1.    This action stems from an illegal price fixing agreement between Defendants.

2.    As will be discussed in more detail throughout this Complaint, Plaintiffs allege that Defendants entered into an agreement to fix, raise, stabilize and maintain the price for liquid crystal displays utilizing thin-film transistors (collectively "LCD products").  As a direct and proximate result of this cartel agreement, consumers such as Plaintiffs have been forced to pay more for products which utilize these technologies, such as televisions, computer monitors, and portable consumer electronics with LCD screens, than they otherwise would have in the absence of the anticompetitive agreement.

3.      Accordingly, Plaintiffs bring this action, on their own behalf and on behalf of others similarly situated, for injunctive relief and damages for violations of Section 1 of the Sherman Act, 15 U.S.C. §1, Section 16 of the Clayton Act, and numerous state antitrust and consumer protection laws including but not limited to §§ 57-1-1 et seq. and 57-12-1 et seq., NMSA 1978.    Plaintiffs further seek punitive and treble damages, attorneys' fees and costs of suit, and other appropriate relief.

## PARTIES, JURISDICTION AND VENUE

4.      Plaintiff Walden Minoli is a resident of Albuquerque, Bernalillo County, New Mexico. In 2006, Plaintiff purchased LCD products manufactured by Defendants.

5.      Plaintiff John David Kittleson is a resident of Albuquerque, Bernalillo County, New Mexico. In 2007, Plaintiff purchased LCD products manufactured by Defendants.

6.      Defendant LG Philips LCD Co., Ltd. is a business entity organized under the laws of the Republic of Korea, with its principal place of business at 17th Floor, West Tower, LG Twin Towers, 20 Yoido-dong, Youngdungpo-gu, Seoul, Republic of Korea 150-721, (011) 82-2-3777-0790.    During the Class Period, LG Philips LCD Co., Ltd. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States and was an active participant in the conduct described herein.

7.      Defendant LG Philips LCD America, Inc. is a wholly owned and controlled subsidiary of LG Philips LCD Co., Ltd. with its prinicipal place of business at 150 East Brokaw Road, San Jose, California 95112.    During the Class Period, LG Philips LCD America, Inc. manufactured, sold and distributed TFT-LCD Products to customers

throughout the United States and was an active participant in the conduct described herein.

8.    Defendant Samsung Electronics Co. Ltd. ("Samsung") is a business entity organized under the laws of South Korea, with its principal place of business at Samsung Main Building 250-2 ga, Taepyung-ro Chung-gu, Seoul, Korea.  During the Class Period, Samsung manufactured, sold and distributed TFT-LCD Products to customers throughout the United States and was an active participant in the conduct described herein.

9.    Defendant Sharp Corporation is a business entity organized under the laws of Japan, with its principal place of business at 22-22 Nagaike-cho, Aben-ku, Osaka 545-8522, Japan.  During the Class Period, Sharp Corporation manufactured, sold and distributed TFT-LCD Products to customers throughout the United States and was an active participant in the conduct described herein.

10.    Defendant Sharp Electronics Corporation is a wholly owned and controlled subsidiary of Sharp Corporation, with its principal place of business at Sharp Plaza, Mahwah, New Jersey, 07430.  During the Class Period, Sharp Electronics Corporation manufactured, sold and distributed TFT-LCD Products to customers throughout the United States and was an active participant in the conduct described herein.  Sharp Corporation and Sharp Electronics Corporation are referred to collectively herein as "Sharp".

11.    Defendant Toshiba Corporation is a business entity organized under the laws of Japan, with its principal place of business at 1-1, Shibaura 1-chome, Minato-ku, Tokyo 105-8001, Japan.  During the Class Period, Toshiba Corporation manufactured,

sold and distributed TFT-LCD Products to customers throughout the United States and was an active participant in the conduct described herein.

12.    Defendant Toshiba Matsushita Display Technology Co., Ltd. is a business entity organized under the laws of Japan with its principal place of business located at Rivage Shinagawa, 1-8, Konan 4-chome, Minato-ku, Tokyo 108-0075, Japan.  Defendant Toshiba Corporation states on its website the following regarding Toshiba Matsushita Technology, Co., Ltd.: "[a]dvanced capabilities in LCD and organic LED displays drive product development and production and enhanced sales operations with a truly worldwide reach.  The company is the undisputed leader in low temperature polysilicon TFT technology, the preferred display for mobile devices and the underpinning technology for organic LED, the next generation display-of-choice for a range of products, including thin profile televisions.  These leading-edge capabilities support us in providing high value added displays that are light and thin, consume little power and offer excellent  image  quality."(<http://www.toshiba.co.jp/worldwide/about/company/tmd.htm>). During  the  Class  Period,  Toshiba  Matsushita  Display  Technology  Co.,  Ltd. manufactured,  sold  and  distributed  TFT-LCD  Products  to  customers  throughout  the United States and was an active participant in the conduct described herein.  Toshiba Corporation and Toshiba Matsushita Display Technology Co., Ltd. are referred to collectively herein as "Toshiba".

13.    Defendant Hitachi Ltd. is a business entity organized under the laws of Japan, with its principal place of business at 6-1 Marunouchi Center Building 13F Chiyoda-ku, Tokyo, 100-8220, Japan.  During the Class Period, Hitachi Ltd. manufactured,  sold  and  distributed  TFT-LCD  Products  to  customers  throughout  the United States and was an active participant in the conduct described herein.

14.    Defendant Hitachi Displays, Ltd. is a business entity organized under the laws of Japan, with its principal place of business located at AKS Bldg. 5F, 6-2 Kanda Neribei-cho 3, Chiyoda-ku, Tokyo, 101-0022, Japan.  On its website, Hitachi Displays, Ltd. states that "[w]e provide the world's best products, quality and service to meet the needs of the digital age.  These include Hitachi's proprietary Advanced-Super IPS LCDs offering clear pictures from any angle; larger sized LCD modules for TVs using our original moving picture technology; small sized LCD modules for information terminal devices such as cellular phones and digital cameras with low power consumption and high resolution picture realized by LTPS (low-temperature polysilicon) technology; and middle-sized colorful LCD modules for amusement devices.  We also produce components such as LCD drivers, color filters and back-lights."  (http://www.hitachi-displays.com/en/company/work/index.html>).    During the Class Period, Hitachi Displays, Ltd. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States and was an active participant in the conduct described herein.

15.    Defendant Hitachi America Ltd. is a wholly owned and controlled subsidiary of defendant Hitachi Ltd.  Hitachi America Ltd. is a business entity organized under the laws of New York, with its principal place of business at 50 Prospect Avenue, Tarrytown, New York, 10591.    During the Class Period, Hitachi America Ltd. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States and was an active participant in the conduct described herein.

16.    Defendant Hitachi Electronic Devices (USA), Inc. is a wholly owned and controlled subsidiary of Defendant Hitachi Ltd., and is a business entity with its principal

place of business located at 575 Mauldin Road Greenville, South Carolina 29607. During the Class Period, Hitachi Electronic Devices (USA), Inc. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States and was an active participant in the conduct described herein.

17.    Defendants Hitachi Ltd., Hitachi Displays, Ltd., Hitachi America Ltd. and Hitachi Electronic Devices (USA), Inc. are referred to collectively herein as "Hitachi".

18.    Defendant Sanyo Epson Imaging Devices Corporation ("Sanyo Epson") is "a joint venture of Seiko Epson Corporation and Sanyo Electric Co., Ltd., that started operations on October 1, 2004. It combines the liquid crystal display operations of Epson, Sanyo Electric, and Sanyo Group companies Tottori Sanyo Electric Co., and Sanyo LCD Engineering Co., LTD and mobilizes each company's special fields of miniaturization, high resolution, high definition, and volume production technology." (<http://www.sanyo-epson.com/e/company/outline/index.html>).  Defendant Sanyo Epson's principal place of business is located at World Trade Center Buildings 15F, 2-4-1 Hamamatsu-cho, Minato-ku, Tokyo Japan.  During the Class Period, Sanyo Epson manufactured, sold and distributed TFT-LCD Products to customers throughout the United States and was an active participant in the conduct described herein.

19.    Defendant NEC Corporation is a business entity organized under the laws of Japan with its principal place of business located at 7-1, Shiba, 5-chome Minato-ku, Tokyo 108-8001 Japan.  During the Class Period, NEC Corporation manufactured, sold and distributed TFT-LCD Products to customers throughout the United States and was an active participant in the conduct described herein.

20.     Defendant NEC LCD Technologies, Ltd. is a wholly owned and controlled subsidiary of Defendant NEC Corporation, and its entity is organized under the laws of Japan with its principal place of business located at 1753 Shimonumabe, Nakahara-Ku, Kawasaki, Kanagawa 211-8666, Japan.    During the Class Period, NEC LCD Technologies, Ltd. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States and was an active participant in the conduct described herein.

21.     Defendant NEC Electronics America, Inc. ("NEC") is a wholly owned and controlled subsidiary of Defendant NEC Electronics Corporation, with its principal place of business at 2880 Scott Boulevard, Santa Clara, California and its manufacturing plant in Roseville, California.    During the Class Period, NEC manufactured, sold and distributed TFT-LCD Products to customers throughout the United States and was an active participant in the conduct described herein.

22.     Defendant IDT International Ltd. is an entity organized under the laws of Bermuda with its principal place of business located at Block C, 9th Floor, Kaiser Estate Phase 1, 41 Man Yue Street, Hunghom, Kowloon, Hong Kong.    During the Class Period, IDT International Ltd. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States and was an active participant in the conduct described herein.

23.     Defendant International Display Technology Co., Ltd. is an entity organized under the laws of Japan with its principal place of business located at Nansei Yaesu Bldg. 3F, 2-2-10 Yaesu, Chuo-Ku, Tokyo 104-0028 Japan.    Defendant International Display Technology Co., Ltd. is a subsidiary of Defendant Chi Mei

Optoelectronics Corporation. During the time period covered by this Complaint, Defendant International Display Technology Co., Ltd. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States and was an active participant in the conduct described herein.

24.    Defendant International Display Technology USA Inc. is a corporation with its principal place of business located at 101 Metro Drive Suite 510, San Jose, California. Defendant International Display Technology USA Inc. is a subsidiary of Chi Mei Optoelectronics Corporation. During the time period covered by the Complaint, Defendant International Display Technology USA Inc. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States and was an active participant in the conduct described herein.

25.    Defendant AU Optronics is Taiwan's largest manufacturer of TFT-LCD Products and has its corporate headquarters at No. 1, Li-Hsin Rd. 2, Hsinchu Science Park, Hsinchu 30078, Taiwan, R.O.C. During the Class Period, AU Optronics manufactured, sold and distributed TFT-LCD Products to customers throughout the United States and was an active participant in the conduct described herein.

26.    Defendant AU Optronics Corporation America ("AUOCA") is a wholly owned and controlled subsidiary of Defendant AU Optronics and has its corporate headquarters at 9720 Cypresswood Drive, Suite 241, Houston, Texas. AUOCA manufactured, sold and distributed TFT-LCD Products to customers throughout the United States and was an active participant in the conduct described herein.

27.    Defendant Chi Mei Optoelectronics Corporation ("Chi Mei") is a leading manufacturer of TFT-LCD Products and has its global headquarters at No. 3, Sec. 1,

9

Huanshi Rd., Southern Taiwan Science Park, Sinshih Township, Tainan County, 74147 Taiwan R.O.C.  During the Class Period, Chi Mei manufactured, sold and distributed TFT-LCD Products to customers throughout the United States and was an active participant in the conduct described herein.

28.    Defendant Chi Mei Optoelectronics USA, Inc. is a wholly owned and controlled subsidiary of Chi Mei and has its corporate headquarters at 101 Metro Drive Suite 510, San Jose, California.  During the Class Period, Chi Mei Optoelectronics USA, Inc. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States and was an active participant in the conduct described herein.

29.    Defendant Chunghwa Picture Tubes, Ltd. ("Chunghwa") is a leading manufacturer of TFT-LCD Products and has its global headquarters at 1127 Hopin Rd., Padeh City, Taoyuan, Taiwan R.O.C.  During the Class Period, Chunghwa manufactured, sold and distributed TFT-LCD Products to customers throughout the United States and was an active participant in the conduct described herein.

30.    Defendant HannStar Display Corporation ("HannStar") is a leading manufactured of TFT-LCD Products and has its headquarters at No. 480, Rueiguang Road, 12th Floor, Neihu Chiu, Taipei 114, Taiwan R.O.C.  During the Class Period, HannStar manufactured, sold and distributed TFT-LCD Products to customers throughout the United States and was an active participant in the conduct described herein.

31.    Defendants John Does 1-100 are at present unknown entities which manufactured, sold and distributed TFT-LCD Products to customers throughout the United States and were active participants in the conduct described herein.

32.    Collectively, the Defendants control the market for LCD products and accordingly Defendants have significant power within the LCD product market.

33.    Defendants John Does 1-100 are presently not ascertainable by Plaintiffs and their identities are within the exclusive knowledge of the Defendants.

34.    The arrangement, contract, agreement, trust, combination, conspiracy, unfair or deceptive practices, and/or uniform and common course of conduct giving rise to Plaintiffs' claims has had a substantial effect upon interstate and intrastate trade and commerce.

35.    Defendants conduct business throughout the United States, including the State of New Mexico, and have purposefully availed themselves of the benefits of the laws of the 50 States.

36.    The Court has jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331 and 1337.  The Court has jurisdiction over the state law claims under 28 U.S.C. § 1367 because the claims are so related to the federal claim that they form part of the same case or controversy.  The Court also has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1332 because the amount in controversy for the Class exceeds $5,000,000, and there are members of the Class who are citizens of a different state than the Defendants.

37.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 in that there is a substantial amount of the affected property, i.e., LCD products manufactured by Defendants, located in this District, and pursuant to 15 U.S.C. § 22 in that Defendants transact business in this District.

## CLASS ACTION ALLEGATIONS

38.     The "Class Period" is December 2002 through the present.

39.     Plaintiffs bring this antitrust class action pursuant to Federal Rule of Civil

Procedure 23 on behalf of:

> All persons within the United States who indirectly purchased LCD
> products, either as stand alone devices or pre-installed in other consumer
> electronic products, which were manufactured, marketed and sold by
> Defendants and their Co-Conspirators at any time from December 2002
> through the present.

40.     Excluded from the Class are all Defendants and their respective officers,

directors, employees, subsidiaries, and affiliates, as well as all governmental entities and

all judges or justices assigned to hear any aspect of this case.

41.     This cause of action may be maintained as a class action pursuant to Fed.

R. Civ. P. 23(b)(2) in that Defendants have acted on grounds generally applicable to the

Class, thereby making appropriate final injunctive relief or corresponding declaratory

relief with respect to the class as a whole, and/or pursuant to Rule 23(b)(3) in that

common questions of law and fact predominate over such questions applicable to Class

members individually as set forth with more specificity below, and class action treatment

of this dispute is superior to all other available means of resolving this controversy.

42.     The members of the Class are so numerous and geographically dispersed

that joinder is impracticable. There are thousands of persons or entities located

throughout the United States that have purchased the relevant products during the Class

Period.

43.     The Class is ascertainable and there is a well-defined community of

interest among members of the Class.

44.    Plaintiffs' claims are typical of those of the Class it represents because Plaintiffs and all of the Class members were injured and continue to be injured in the same manner by Defendants' illegal and unfair methods, acts and practices and wrongful conduct in the conspiracy to fix prices complained of herein, i.e., they have been forced to pay supracompetitive prices for LCD products manufactured by Defendants.

45.    Plaintiffs will fairly and adequately protect and represent the interests of the members of the Class.  The interests of the Plaintiffs are coincident with, and not antagonistic to, those of the Class.  Plaintiffs have retained counsel competent and experienced in class action antitrust litigation.

46.    Defendants' illegal and inequitable methods, acts and trade practices have targeted and affected all members of the Class in a similar manner.

47.    Questions of law and fact common to the members of the Class predominate over questions, if any, that may affect only individual Class members because Defendants have acted on grounds generally applicable to the entire Class.  Such generally applicable conduct is inherent in Defendants' unlawful conduct.  Among the questions of law and fact common to the Class are:

•    Whether Defendants entered into an agreement to fix, raise, stabilize and/or maintain prices for the LCD products;

•    Whether Defendants' agreement did, in fact, fix, raise, stabilize and/or maintain prices for the LCD products;

•    Whether Defendants' conduct constitutes a violation of the Sherman Act and the various state antitrust and consumer protection statutes;

- Whether Defendants' conduct caused injury to the business or property of Plaintiffs and members of the Class;

- Whether and to what extent class-wide injunctive relief is appropriate;

- Whether Plaintiffs and members of the Class sustained damage as a result of Defendants' conduct; and

- The appropriate measure of the amount of damages suffered by the Class.

48. These and other common questions of law or fact predominate over any questions affecting only individual members of the Class.

49. Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that individual actions would engender. Although not wholly insubstantial, the damages suffered by individual class members are relatively small as compared to the cost and burden of individual litigation. The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in management of this class action.

50. Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

51.    In the absence of a class action, Defendants would be unjustly enriched because they would be able to retain the benefits and fruits of their wrongful conduct.

52.    Plaintiffs know of no difficulty to be encountered in the litigation of this action that would preclude its maintenance as a class action.

53.    The claims in this case are also certifiable on a class-wide basis under the laws of the State of New Mexico, and of the other individual states identified herein.

**OVERVIEW OF THE LCD MARKET**

54.    Throughout the period of time covered by the Complaint, Defendants engaged in the business of manufacturing, marketing, and selling LCD products throughout the United States.

55.    A liquid crystal display (LCD) is a thin, flat display device made up of color or monochrome pixels arrayed in front of a light source or reflector.  LCDs with a small number of segments, such as those used in digital watches and pocket calculators, have a single electrical contact for each segment. An external dedicated circuit supplies an electric charge to control each segment. This display structure is unwieldy for more than a few display elements.

56.    Small monochrome displays such as those found in older personal organizers and laptop screens have a passive-matrix structure employing supertwist nematic (STN) or double-layer STN (DSTN) technology.  Each row or column of the display has a single electrical circuit. The pixels are addressed one at a time by row and column addresses. This type of display is called a passive matrix because the pixel must retain its state between refreshes without the benefit of a steady electrical charge. As the number of pixels (and, correspondingly, columns and rows) increases, this type of display

becomes less feasible. Very slow response times and poor contrast are typical of passive-matrix LCDs.

57.    In contrast, high-resolution color displays such as modern LCD computer monitors and televisions use an active matrix structure made possible largely by thin-film transistors (TFTs) such as those manufactured and/or utilized by Defendants. A matrix of thin-film transistors (TFTs) is added to the polarizing and color filters. Each pixel has its own dedicated transistor, allowing each column line to access one pixel. Active-matrix displays are much brighter and sharper than passive-matrix displays of the same size, and generally have quicker response times, producing much better images.

58.    The LCD products at issue in this litigation are used in a broad range of consumer electronic products that are available either as stand alone products, such as flat-panel televisions and monitors, or as significant component parts of consumer electronic devices, such as mobile phone and laptop screens, and screens on digital cameras and portable digital media players.

59.    Defendants' LCD products are sold by a host of companies under a variety of different brand names.  Companies who use Defendants' LCD displays for laptop computer monitors include Hewlett-Packard, Toshiba, Acer, and Dell.  In addition to desktop computer monitors sold under Defendants' own brand names, their LCD panels can also be found in products sold by Dell, Hewlett-Packard, and Apple.  Flat screen televisions sold by Defendants utilize Defendants' own LCD panels.  Other companies that use Defendants' LCD panels in consumer products include Seiko Instrument Inc., Sinco, Action Technology, and Noedis.

60.     Defendants hold and/or control patents relevant to the TFT technology, such that manufacturers of products which require active-matrix, TFT-based LCD displays must either purchase them from Defendants and/or pay royalties or license fees to Defendants for their use.

61.     Demand for LCD products utilizing TFT technology has skyrocketed in recent years due to their ability to provide sharper, brighter, more colorful screens with a much smaller footprint than traditional display technologies.

62.     Accordingly, the market for LCD products is large and steadily increasing in size. Shipments of LCD displays is predicted to rise to 154.3 million units in the first half of 2007, which is a 6.3 percent increase from the 145.2 million units shipped during the latter half of 2006, and is a 23.7 percent increase from the first half in 2006.

63.     A review of the LCD display market reveals astonishing parallelism in pricing amongst similar LCD products manufactured by Defendants. This parallelism has sustained itself over time, notwithstanding increased demand and other market forces that would tend to create high levels of competition and price fluctuation.

**GOVERNMENT INVESTIGATION INTO DEFENDANTS' BEHAVIOR**

64.     On or about December 12, 2006, it was announced that federal prosecutors were investigating allegations of price-fixing in the LCD product market. This investigation was and is being coordinated with antitrust regulators in Japan, Korea, and Europe.

65.     According to the Wall Street Journal, Defendants confirmed on December 12, 2006 that they had been served with subpoenas in relation to this investigation in South Korea, the United States, and Japan.

66.    The Wall Street Journal also indicated that the European Commission also confirmed that it was investigating price-fixing allegations in the market for LCDs.

### DEFENDANTS' UNLAWFUL AGREEMENT

67.    Beginning at a time unknown but at least as early as December 2002 through the present, Defendants entered into an agreement, combination and/or conspiracy in restraint of trade to fix, raise, stabilize and maintain the price for thin-film transistors and the LCD products utilizing thin-film transistors.

68.    Defendants also maintain supracompetive pricing for their LCD products by conspiring to limit production of these products through sales contracts with manufacturers of products which require LCD displays.

69.    In fact, Defendants' agreement, combination and/or conspiracy has had the effect of fixing, raising, stabilizing and maintaining the price for these products at supracompetitive levels.

70.    As a direct and proximate result of Defendants' illegal agreement, combination and/or conspiracy, Plaintiffs and members of the Class have sustained damage.

### FRAUDULENT CONCEALMENT

71.    Until recently, Plaintiffs and members of the Class had no knowledge of the contract, combination or conspiracy alleged herein or of any facts that might have lead to the discovery thereof in the exercise of reasonable diligence.  Plaintiffs and other members of the Class could not have discovered the contracts, combinations or conspiracies at an earlier date by the exercise of due diligence because of the deceptive

practices and techniques of secrecy employed by Defendants to avoid detection of, and to fraudulently conceal, their contracts, combinations, and conspiracies.

72.     Because the contracts, combinations or conspiracies were kept secret by Defendants, Plaintiffs and the members of the Class were unaware that prices of LCD products were artificially high as a result of the secret conduct alleged herein.

73.     The contracts, combinations or conspiracies alleged herein are, by their nature, self-concealing.

74.     To the extent that purchases by Plaintiffs and the Class members precede the statute of limitations period, any failure to file by Plaintiffs is directly attributable to the Defendants' misconduct.

75.     Defendants, by their actions and conduct, have willfully caused Plaintiffs and the public generally to believe that their price increases were lawful, and not the product of illegal collusion.

76.     As a result of Defendants' concealment of the contract, combination or conspiracy, Defendants have induced Plaintiff not to file this Complaint earlier.  Under these circumstances, Defendants are estopped from asserting the statute of limitations as a defense to these claims.

### COUNT I
### VIOLATION OF SECTION 1 OF THE SHERMAN ACT, 15 U.S.C. § 1

77.     Plaintiffs repeat and reallege the preceding paragraphs and incorporate them herein by reference.

78.     Section 1 of the Sherman Act, 15 U.S.C. § 1, provides in relevant part that:

Every contract, combination in the form of trust or otherwise, or conspiracy, in restrain of trade or commerce among the several States, or with foreign nations, is declared to be illegal.

79.     Beginning at a time unknown but at least as early as December 2002 through the present, Defendants have been parties to an illegal cartel agreement, contract, combination and/or conspiracy designed to fix, raise, stabilize and maintain the price for LCD products as described with more specificity herein.  Such agreement constitutes a violation of Section 1 of the Sherman Act.

80.     Defendants' contract, combination or conspiracy has included concerted action and undertakings among these Defendants with the purpose and effect to: (a) fix, raise, maintain, and stabilize the price of LCD products; and (b) ensure that Plaintiff and members of the Class would pay supracompetitive prices for Defendants' LCD products.

81.     The acts done by each of the Defendants as part of, and in furtherance of, their contract, combination or conspiracy were authorized, ordered or done by their officers, agents, employees or representatives while actively engaged in the management of Defendants' affairs.

82.     As a direct and proximate result of Defendants' conduct as described herein, Plaintiffs and members of the Class have paid more than they would have for Defendants' LCD products.

83.     Plaintiffs and the Class are therefore entitled to an injunction against Defendants, preventing and restraining the violations alleged herein, plus costs, attorneys' fees and such other and further relief as this Court deems just and proper under the circumstances.

## COUNT II
## VIOLATION OF THE NEW MEXICO ANTITRUST ACT

84.    Plaintiffs repeat and reallege the preceding paragraphs and incorporate them herein by reference.

85.    The antitrust provisions of the New Mexico statutes, §§ 57-1-1 et seq. NMSA 1978, provide in relevant part that:

> §57-1-1.    Every contract, agreement, combination or conspiracy in restraint of trade or commerce, any part of which trade or commerce is within the state, is unlawful.

> §57-1-2.    It is hereby declared to be unlawful for any person to monopolize or attempt to monopolize, or combine or conspire with any other persons to monopolize, trade or commerce, any part of which trade or commerce is within the state.

> §57-1-3.A.    All contracts and agreements in violation of Sections 57-1-1 or 57-1-2 NMSA 1978 shall void, and any person threatened with injury or injured in his business or property, directly or indirectly, by a violation of Section 57-1-1 or 57-1-2 NMSA 1978 may bring an action for appropriate injunctive relief, up to threefold the damages sustained and costs and reasonable attorneys' fees.

86.    Beginning at a time unknown but at least as early as December 2002 through the present, Defendants have been parties to an illegal cartel agreement, contract, combination and/or conspiracy designed to fix, raise, stabilize and maintain the price for LCD products as described with more specificity herein.  Such agreement constitutes a violation of §§ 57-1-1, 57-1-2, and 57-1-3, NMSA 1978.

87.    Defendants' contract, combination or conspiracy has included concerted action and undertakings among these Defendants with the purpose and effect to: (a) fix, raise, maintain, and stabilize the price of LCD products; and (b) ensure that Plaintiff and members of the Class would pay supracompetitive prices for Defendants' LCD products.

88.     The acts done by each of the Defendants as part of, and in furtherance of, their contract, combination or conspiracy were authorized, ordered or done by their officers, agents, employees or representatives while actively engaged in the management of Defendants' affairs.

89.     As a direct and proximate result of Defendants' conduct as described herein, Plaintiffs and members of the Class have paid more than they would have for Defendants' LCD products.

90.     Plaintiffs and the Class are therefore entitled to their damages, treble damages, plus costs, pre- and post- judgment interest, and attorneys' fees.

**COUNT III**
**VIOLATION OF NEW MEXICO UNFAIR PRACTICES ACT**

91.     Plaintiffs repeat and reallege the preceding paragraphs and incorporate them herein by reference.

92.     The New Mexico Unfair Practices Act, §§ 57-12-1 et seq., ("NMUPA") provides in pertinent part as follows:

§57-12.1.D.  "unfair or deceptive trade practices" … [include]   (11) making false or misleading statements of fact concerning the price of goods or services, the prices of competitors or one's own price at a past or future time or the reasons for, existence or amounts of price reduction.

§57-12-1.E.  "unconscionable trade practices" means any act or practice in connection with the sale, lease, rental or loan, in connection with the offering for sale, lease, rental or loan, of any goods or services … which to a person's detriment (1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or (2) results in a gross disparity between the value received by a person and the price paid.

§57-12-3.  Unfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce are unlawful.

93.     Defendants' unlawful agreements constitute unfair and deceptive trade practices and unconscionable trade practices in violation of the NMUPA.

94.     As a direct and proximate result of Defendants' and their Co-Conspirators' violation of the NMUPA, Plaintiffs and members of the Class have paid more for Defendants' LCD products than they would have in a free and competitive market, and were the victims of unfair and deceptive practices committed by these Defendants.

95.     Plaintiffs and the Class are therefore entitled to their damages, treble damages, plus costs, pre- and post- judgment interest, and attorneys' fees.

**COUNT IV**
**VIOLATION OF ANTITRUST AND/OR CONSUMER PROTECTION**
**STATUTES OF THE INDIRECT PURCHASER STATES**

96.     Plaintiffs repeat and reallege the preceding paragraphs and incorporate them herein by reference.

97.     Defendants' misconduct, as alleged herein, violates the antitrust laws of the Indirect Purchaser States.

98.     Defendants' misconduct, as alleged herein, was and is in violation of the Arizona Uniform State Antitrust Act, Ariz. Rev. Stat. §§ 44-1401, et seq., the Arizona Consumer Fraud Act, Ariz. Rev. Stat. §§ 44-1521, et seq., and the Constitution of the State of Arizona, Article 14, § 15.

99.     Defendants' misconduct, as alleged herein, was and is in violation of the Cartwright Act, Cal. Bus. & Prof. Code §§ 16700, et seq., and the California Unfair Competition Act, Cal. Bus. & Prof. Code §§ 16700, et seq.

100.     Defendants' misconduct, as alleged herein, was and is in violation of the District of Columbia Antitrust Act, D.C. Code §§ 28-4501, et seq.

101.    Defendants' misconduct, as alleged herein, was and is in violation of the Florida Antitrust Act, Fla. Stat. Ann. §§ 542.15, et seq., and the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. §§ 501.201, et seq.

102.    Defendants' misconduct, as alleged herein, was and is in violation of the Iowa Competition Law, Iowa Code §§ 553.1, et seq.

103.    Defendants' misconduct, as alleged herein, was and is in violation of the Kansas Monopolies and Unfair Trade Act, Kan. Stat. Ann. §§ 50-101, et seq., and the Kansas Consumer Protection Act, Kan. Stat. Ann. §§ 50-623, et seq.

104.    Defendants' misconduct, as alleged herein, was and is in violation of the Maine Monopolies and Profiteering Statute, Me. Rev. Stat. Ann. Tit. 10, §§ 1101, et seq., and the Maine Unfair Trade Practices Act, Me. Rev. Stat. Ann. Tit. 5, §§ 205-A, et seq.

105.    Defendants' misconduct, as alleged herein, was and is in violation of the Michigan Antitrust Reform Act, Mich. Comp. Laws §§ 445.771, et seq., and the Michigan Consumer Protection Act, Mich. Comp. Laws §§ 445.901, et seq.

106.    Defendants' misconduct, as alleged herein, was and is in violation of the Minnesota Antitrust Law of 1971, Minn. Stat. §§ 325D.49, et seq., and the Minnesota Consumer Fraud Act, Minn. Stat.  §§ 325F.67, et seq.

107.    Defendants' misconduct, as alleged herein, was and is in violation of the Nebraska Consumer Protection Act, Neb. Rev. Stat. §§ 59-1601, et seq.

108.    Defendants' misconduct, as alleged herein, was and is in violation of the New Mexico Antitrust Act, NMSA §§ 57-1-1, et seq., and the New Mexico Unfair Practices Act, NMSA. §§ 57-12-1, et seq.

109.    Defendants' misconduct, as alleged herein, was and is in violation of the Donnelly Act, N.Y. Gen. Bus. Law §§ 340, et seq., and the New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349 et seq.

110.    Defendants' misconduct, as alleged herein, was and is in violation of North Carolina's antitrust and unfair competition law, N.C. Gen. Stat. §§ 75-1, et seq.

111.    Defendants' misconduct, as alleged herein, was and is in violation of the North Dakota Antitrust Act, N.D. Cent. Code §§ 51-08.1-01, et seq., and the North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51-15-01, et seq.

112.    Defendants' misconduct, as alleged herein, was and is in violation of the Tennessee Antitrust Act, Tenn. Code Ann. § 47-18-104 (a) and (b)(27), et seq.

113.    Defendants' misconduct, as alleged herein, was and is in violation of South Dakota's antitrust law, S.D. Codified Laws §§ 37-1-3, et seq., and the deceptive trade practices and consumer protection law, S.D. Codified Laws §§ 37-24-1, et seq.

114.    Defendants' misconduct, as alleged herein, was and is in violation of the Vermont Consumer Fraud Act, Vt. Stat. tit. 9, §§ 2451, et seq.

115.    Defendants' misconduct, as alleged herein, was and is in violation of the West Virginia Antitrust Act, W.Va. Code §§ 47-18-1, et seq., and the West Virginia Consumer Credit and Protection Act, W. Va. Code §§ 46A-6-101, et seq.

116.    Defendants' misconduct, as alleged herein, was and is in violation of the Wisconsin Antitrust Act, Wis. Stat. §§ 133.01, et seq., and the Wisconsin Unfair Trade Practices Act, Wis. Stat. §§ 100.20, et seq.

117.    As a direct and proximate result of Defendants' violation of the laws of the Indirect Purchaser States, Plaintiffs and members of the Class have paid more for

products utilizing Defendants' LCD products than they would have in a free and competitive market, and were the victims of unfair and deceptive practices committed by these Defendants.

118.   Plaintiffs and the Class are therefore entitled to their damages, treble and/or punitive damages, plus costs, pre- and post-judgment interest, and attorneys' fees.

## COUNT V
## STATE CONSUMER PROTECTION STATUTES

119.   Plaintiffs repeat and reallege the preceding paragraphs and incorporate them herein by reference.

120.   Defendants misconduct, as alleged herein, is in violation of the consumer protection statutes of the fifty states and the District of Columbia.

121.   Defendants' behavior constitutes a violation of the Alaska Unfair Trade Practices and Consumer Protection Act (Alaska Stat. §45.50.471 et seq.).

122.   Defendants' behavior constitutes a violation of the Arizona Consumer Fraud Statute (Ariz. Rev. Stat. Ann. §44-1521 et seq.).

123.   Defendants' behavior constitutes a violation of the Arkansas Deceptive Trade Practices Act (Ark. Code Ann. §4-88-101 et seq.).

124.   Defendants' behavior constitutes a violation of the California Unfair Competition Law (Cal. Bus. & Prof. Code, § 17200 et seq.).

125.   Defendants' behavior constitutes a violation of the Colorado Consumer Protection Act (Colo. Rev. Stat. §6-1-101 et seq.).

126.   Defendants' behavior constitutes a violation of the Connecticut Unfair Trade Practices Act (Conn. Gen. Stat. §42-110a et seq.).

127.    Defendants' behavior constitutes a violation of the Delaware Consumer Fraud Act (De. Code Ann. Tit. 6, §2511 et seq.) and the Deceptive Trade Practices Act (Del. Code Ann. Tit. 6, §2531 et seq.).

128.    Defendants' behavior constitutes a violation of the Consumer Protection Procedures Act for the District of Columbia (D.C. Code Ann. §28-3901 et seq.).

129.    Defendants' behavior constitutes a violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA") §501.201, et seq., plus attorneys fees and court costs pursuant to Florida Statutes §501.2105.

130.    Defendants' behavior constitutes a violation of the Hawaii Federal Trade Commission Act (Hawaii Rev. Stat. §480 et seq.) and the Uniform Deceptive Trade Practice Act (Hawaii Rev. Stat. §481A et seq.).

131.    Defendants' behavior constitutes a violation of the Idaho Consumer Protection Act (Idaho Code §48-601 et seq.).

132.    Defendants' behavior constitutes a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 Ill. Comp. Stat. Ann. §505/1 et seq. (Smith Hurd)) and the Uniform Deceptive Trade Practices Act (815 Ill. Comp. Stat. Ann. 510/1 et seq. (Smith Hurd)).

133.    Defendants' behavior constitutes a violation of the Iowa Consumer Fraud Act (Iowa Code Ann. §714.16 (West)).

134.    Defendants' behavior constitutes a violation of the Kansas Consumer Protection Act (Kan. Stat. Ann. §50-623 et seq.).

135.    Defendants' behavior constitutes a violation of Kentucky's Consumer Protection Act (Ky. Rev. Stat. §367.110 et seq.).

136.    Defendants' behavior constitutes a violation of the Maryland Consumer Protection Act (Md. Com. Law Code Ann. §§13-101 et seq., 14-101 et seq.).

137.    Defendants' behavior constitutes a violation of the Michigan Consumer Protection Act (Mich. Comp. Laws Ann. §445.901 et seq.) and the Michigan Pricing and Advertising Act (Mich. Comp. Laws Ann. §445.351 et seq.).

138.    Defendants' behavior constitutes a violation of Minnesota's Consumer Fraud Act (Minn. Stat. Ann. §325 F. 69); the False Statement in Advertisement Statute (Minn. Stat. Ann. §325 F. 67); and the Uniform Deceptive Trade Practices Act (Minn. Stat. Ann. §325D.4).

139.    Defendants' behavior constitutes a violation of the Missouri Merchandising Practices Act (Mo. Rev. Stat. §407.010 et seq.).

140.    Defendants' behavior constitutes a violation of the Nebraska Consumer Protection Act (Neb. Rev. Stat. §59-1601 et seq.) and the Nebraska Uniform Deceptive Trade Practices Act (Neb. Rev. Stat. §87-301 et seq.).

141.    Defendants' behavior constitutes a violation of Nevada's Deceptive Trade Statutes (Nev. Rev. Stat. §§598.0903 et seq., 41.600 et seq.).

142.    Defendants' behavior constitutes a violation of New Hampshire's Regulation of Business Practices for Consumer Protection Act (N.H. Rev. Stat. Ann. §358-A:1 et seq.).

143.    Defendants' behavior constitutes a violation of the New Jersey Consumer Fraud Act (N.J. Stat. Ann. §56:8-1 et seq. (West)).

144.    Defendants' behavior constitutes a violation of the New Mexico Unfair Practices Act  (§§ 57-12-1 et seq., NMSA 1978).

145.    Defendants' behavior constitutes a violation of the New York Consumer Protection Act (N.Y. Gen. Bus. Law §§ 349, 350 (Consol.)).

146.    Defendants' behavior constitutes a violation of the North Carolina Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. §75-1.1 et seq.).

147.    Defendants' behavior constitutes a violation of North Dakota's Deceptive Act or Practice Statutes (N.D. Gen. Stat. §51-15-01 et. seq.).

148.    Defendants' behavior constitutes a violation of the Ohio Consumer Sales Practices Act (Ohio Rev. Code Ann. §1345.01 et seq. (Baldwin)).

149.    Defendants' behavior constitutes a violation of the Oklahoma Consumer Protection Act (Okla. Stat. Ann. Tit. 15, §751 et seq. (West)) and the Oklahoma Deceptive Trade Practices Act (Okla. Stat. Ann. Tit. 78, §51 et seq. (West)).

150.    Defendants' behavior constitutes a violation of Oregon's Unlawful Trade Practices Act (Or. Rev. Stat. §646.605 et seq.) and the Oregon Food and Other Commodities Act (Or. Rev. Stat. §616.005 et seq.).

151.    Defendants' behavior constitutes a violation of Pennsylvania's Unfair Trade Practices Act and Consumer Protection Law (Pa. Stat. Ann. Tit. 73 §201-1 et seq. (Purdon)).

152.    Defendants' behavior constitutes a violation of Rhode Island's Consumer Protection Act (R.I. Gen. Law §6-13.1-1 et seq.).

153.    Defendants' behavior constitutes a violation of the South Carolina Unfair Trade Practices Act (S.C. Code Ann. §39-5-10 et seq.).

154.    Defendants' behavior constitutes a violation of the South Dakota Deceptive Trade Practices and Consumer Protection Law (S.D. Codified Laws Ann. §37-24-1 et seq.).

155.    Defendants' behavior constitutes a violation of the Tennessee Consumer Protection Act (Tenn. Code Ann. §47-18-101 et seq.).

156.    Defendants' behavior constitutes a violation of the Vermont Consumer Fraud Statute (Vt. Stat. Ann. Tit. 9, §2451 et seq.).

157.    Defendants' behavior constitutes a violation of the Virginia Consumer Protection Act (Va. Code 59.1-196 et seq.).

158.    Defendants' behavior constitutes a violation of the Washington Consumer Protection Act (Wash. Rev. Code Ann. §19.86 et seq.).

159.    Defendants' behavior constitutes a violation of the West Virginia Consumer Credit and Protection Act (W. Va. Code §46A-6-101 et seq.).

160.    Defendants' behavior constitutes a violation of the Wisconsin Fraudulent Representations Act (Wis. Stat. Ann. §100.18 et seq. (West)).

161.    Defendants' behavior constitutes a violation of any other applicable statutory causes of action of the 50 states and the District of Columbia.

162.    As a direct and proximate result of Defendants' violation of these statutes, Plaintiff and the Class have sustained damages.

163.    Plaintiffs and the Class are therefore entitled to their damages, treble and/or punitive damages, plus costs, pre- and pose- judgment interest, and attorneys' fees.

## COUNT VI
## UNJUST ENRICHMENT

164.    Plaintiffs repeat and reallege the preceding paragraphs and incorporate them herein by reference.

165.    Defendants have been unjustly enriched through overpayments by Plaintiffs and Class members and the resulting profits.

166.    Under common law principles of unjust enrichment, Defendants should not be permitted to retain the benefits conferred via overpayments by Plaintiffs and Class members.

167.    Plaintiffs seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiffs and Class members may seek restitution.

### JURY DEMAND

168.    Plaintiffs hereby demand trial by jury.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray this Court award them the following relief:

a.    That the Court determine that the Sherman Act, state antitrust law, and state consumer protection and/or unfair competition law claims alleged herein may be maintained as a class action under Rule 23(a), (b)(2) and (b)(3);

b.    That Plaintiffs be appointed as representatives of the Class;

c.    That Plaintiffs' counsel be appointed as counsel for the Class;

d.    That the unlawful conduct, contract, conspiracy or combination alleged herein be adjudged and decreed to be: (1) a restraint of trade or commerce in violation of Section 1 of the Sherman Act; (2) an unlawful agreement in violation of the state antitrust

statutes identified herein, (3) violations of state consumer protection statutes identified herein, and (4) acts of unjust enrichment;

     e.      That Defendants be enjoined and restrained from engaging in the conduct described herein;

     f.      That Plaintiffs be awarded restitution, including disgorgement of profits obtained by Defendants as a result of their improper acts as described herein;

     g.      That Plaintiffs be awarded restitution, including disgorgement of profits obtained by Defendants as a result of their improper acts as described herein;

     h.      That judgment be entered in favor of Plaintiffs and the Class;

     i.      That Plaintiffs and the Class be awarded reasonable attorneys' fees;

     j.      That Plaintiffs and the Class be reimbursed for costs reasonably incurred in the prosecution of this litigation; and

     k.      That the Court award such other and further relief as it deems just and proper under the circumstances.

Respectfully submitted,

YENSON, LYNN, ALLEN & WOSICK, P.C.
Patrick D. Allen
Michael S. Jahner
4908 Alameda Blvd NE
Albuquerque, New Mexico 87113-1736
(505) 266-3995

CAREY & DANIS, LLC
Michael J. Flannery
James J. Rosemergy
8235 Forsyth Boulevard, Suite 1100
St. Louis, Missouri 63105
(314) 725-7700

By: _____